1
2
3
4
5
6

COAST LAW GROUP, LLP
MARCO A. GONZALEZ (SBN 190832)
LIVIA BORAK (SBN 259434)
1140 South Coast Highway 101
Encinitas, CA 92024
Ph: (760) 942-8505
Fx: (760) 942-8515
email: marco@coastlawgroup.com

7
8

Attorneys for Plaintiff
COASTAL ENVIRONMENTAL RIGHTS FOUNDATION

9

10
11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

12
13
14
15
16
17
18
19
20

COASTAL ENVIRONMENTAL RIGHTS
FOUNDATION,
a non-profit corporation,

          Plaintiff,

    v.

CALIFORNIA METALS, Inc. a
corporation,

        Defendant.

Civil Case No.: **'15CV0380 JM    RBB**

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF AND**
**CIVIL PENALTIES**

**(Federal Water Pollution Control Act,**
**33 U.S.C. § 1251 *et seq*.)**

21
22
23
24
25
26
27
28

Coastal Environmental Rights Foundation, (hereinafter referred to as "CERF" or "Plaintiff"), by and through its counsel, hereby alleges:

I.    **JURISDICTION AND VENUE**

1.   This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (the "Clean Water Act" or the "CWA"). This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.   On June 27, 2014, CERF issued a 60-day notice letter ("Initial Notice Letter") to California Metals, Inc., operating as California Metals Supply, All Computer Surplus, One Earth Recycling and Miller Metals Co, (collectively referred to as "California Metals Owners and/or Operators" or "Defendants") regarding their violations of the Clean Water Act, and of CERF's intention to file suit against Defendants. On August 15, 2014, CERF issued a second 60-day notice letter ("Second Notice Letter") to the California Metals Owners and/or Operators. The Initial and Second Notice Letters were sent to the registered agent, Jerry Turchin, for California Metals, Inc, as required by 40 C.F.R. § 135.2(a)(2). Finally, the Initial and Second Notice Letters was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Regional Water Quality Control Board, San Diego Region ("Regional Board") as required by CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of the Initial Notice Letter is attached hereto as Exhibit A and incorporated herein. A true and correct copy of the Second Notice Letter is attached hereto as Exhibit B and incorporated herein.

3.   More than sixty days has passed since the Initial and Second Notice Letters were served on Defendants and the State and Federal agencies. Plaintiff is informed and believes, and thereon alleges, that neither the EPA nor the State of California has

Complaint for Declaratory and Injunctive Relief and Civil Penalties

commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. (33 U.S.C. § 1365(b)(1)(B)). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA, 33 U.S.C. § 1319(g).

4. Venue is proper in the Southern District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this judicial district.

## II.   INTRODUCTION

5. This complaint seeks relief for the Defendants' unlawful discharge of pollutants into waters of the United States from its operations at 297 S. Marshall Avenue, El Cajon, California (hereinafter "297 S. Marshall Facility"), and from its operations 636 Front Street, El Cajon, California (hereinafter "636 Front Facility") (collectively referred to as the "California Metals Facilities" or the "Sites"). Specifically, Defendants discharge storm water runoff from the Sites into storm drains, the San Diego River and ultimately the Pacific Ocean (collectively referred to as the "Receiving Waters"). This complaint also seeks relief for Defendants' violations of the filing, monitoring, reporting, discharge and management practice requirements, and other procedural and substantive requirements of California's General Permit for Discharges Associated with Industrial Activities (*National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 97-03-DWQ, as amended by Order No. 97-03-DWQ*) (hereinafter "Industrial Permit"). These are ongoing and continuous violations of the Clean Water Act and the Industrial Permit.

6. With every rainfall event, hundreds of millions of gallons of polluted rainwater, originating from industrial operations such as the California Metals Facilities, pour into the El Cajon and San Diego storm drain systems, the San Diego River and ultimately the Pacific Ocean. This discharge of pollutants in storm water from industrial activities such as the California Metals Facilities contributes to the impairment of downstream waters and compromises or destroys their beneficial uses.

## III.   PARTIES

### A.   Coastal Environmental Rights Foundation

7.  Plaintiff CERF is a non-profit public benefit corporation organized under the laws of the State of California.

8.  CERF's office is located at 1140 South Coast Highway 101, Encinitas California, 92024.

9.  CERF was founded by surfers in North San Diego County and active throughout California's coastal communities. CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents. One of CERF's primary areas of advocacy is water quality protection and enhancement.

10.   CERF has over 1,000 members who live and/or recreate in and around San Diego River and Pacific Ocean.

11.   Members of CERF use and enjoy the Receiving Waters to fish, sail, boat, kayak, paddle board, surf, swim, hike, view wildlife, and engage in scientific study including monitoring activities, among other activities. Defendants' discharge pollutants from the Sites to the Receiving Waters used by CERF's members. Thus, discharges of pollutants by Defendants impair CERF's members' uses and enjoyment of the Receiving Waters.

12.   The interests of CERF's members have been, are being, and will continue to be adversely affected by the Defendants' failure to comply with the Clean Water Act and the Industrial Permit.  The relief sought herein will redress the harms to Plaintiff caused by Defendants' activities. Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at law.

### B.   The California Metals Owners and/or Operators

13.   CERF is informed and believes that California Metals, Inc. ("California Metals") is a private corporation organized under the laws of the State of California, and

Complaint for Declaratory and Injunctive Relief and Civil Penalties

1  is located in El Cajon, California.

2       14.   CERF is informed and believes, and thereon alleges that California Metals

3  does business as California Metals Supply, All Computer Surplus, One Earth Recycling

4  and Miller Metals Co and conducts industrial activities at the California Metals

5  Facilities.

6  **IV.   STATUTORY BACKGROUND**

7       **A.   The Clean Water Act**

8       15.   Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the

9  discharge of any pollutant into waters of the United States unless the discharge complies

10 with various enumerated sections of the CWA. Among other things, Section 301(a)

11 prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit

12 issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

13      16.   Section 402(p) of the CWA establishes a framework for regulating

14 municipal and industrial storm water discharges under the NPDES program. (33 U.S.C.

15 § 1342(p)). States with approved NPDES permit programs are authorized by Section

16 402(b) to regulate industrial storm water discharges through individual permits issued to

17 dischargers and/or through the issuance of a single, statewide general permit applicable

18 to all industrial storm water dischargers. (33 U.S.C. § 1342).

19      17.   Section 402(b) of the CWA allows each state to administer its own EPA-

20 approved permit for storm water discharges. (33 U.S.C. § 1342(b)). In California, the

21 State Board is charged with regulating pollutants to protect California's water resources.

22      18.   The Industrial Permit is a statewide general NPDES permit issued by the

23 State Board pursuant to Section 402 of the CWA that regulates the discharge of

24 pollutants from industrial sites. (33 U.S.C. § 1342).

25      19.   Section 505(a)(1) of the CWA provides for citizen enforcement actions

26 against any "person" who is alleged to be in violation of an "effluent standard or

27 limitation… or an order issued by the Administrator or a State with respect to such a

28 standard or limitation." (33 U.S.C. § 1365(a)(1)).

20.     An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

21.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for all violations occurring after January 12, 2009. (33 U.S.C. § 1319(d); Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §19.4).

22.     Section 505(d) of the Clean Water Act permits prevailing parties to recover costs, including attorneys' and experts' fees. (33 U.S.C. § 1365(d)).

**B.     California's Industrial Permit**

23.     The Industrial Permit is an NPDES permit adopted pursuant to Section 402 of the CWA, 33 U.S.C. § 1342(b) and 40 C.F.R § 123.25.  In order to discharge storm water lawfully in California, industrial dischargers must secure coverage under the Industrial Permit and comply with its terms, or obtain and comply with an individual NPDES permit.

24.     Discharge Prohibition A(1) of the General Permit prohibits the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise regulated by an NPDES permit, to the waters of the United States. Discharge Prohibition A(2) of the Industrial Permit prohibits storm water discharges and authorized non-storm water discharges which cause or threaten to cause pollution, contamination, or nuisance.

25.     Effluent limitation B(3) of the Industrial Permit requires facility operators to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.

26.     Receiving Water Limitation C(1) of the Industrial Permit prohibits storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impacts human health or the environment.

27.     Receiving Water Limitation C(2) of the Industrial Permit prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable water quality standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

28.     Section A(1) and Provision E(2) of the Industrial Permit require dischargers to have developed and implemented a Storm Water Pollution Prevention Plan ("SWPPP") by October 1, 1992, or prior to beginning industrial activities, that meets all the requirements of the Industrial Permit.

29.     The objective of the SWPPP is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges from the Sites, and identify and implement site-specific Best Management Practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water discharges. (Industrial Permit, Section A(2)).

30.     To ensure its effectiveness, Section A(9) of the Industrial Permit requires the SWPPP to be evaluated on an annual basis, and it must be revised as necessary to ensure compliance with the Permit. (Industrial Permit, Section A(9), (10)).

31.     Sections A(3) through A(10) of the Industrial Permit set forth the requirements for a SWPPP.

32.     Section A(3) of the Industrial Permit requires the discharger to create a team to develop the SWPPP, which considers all Federal, State, and local requirements.

33.     The SWPPP must include a site map showing the facility boundaries, storm water drainage areas with flow patterns, nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, areas of actual and potential pollutant contact, and areas of industrial activity. (Industrial Permit, Section A(4)).

34.     The SWPPP must also include a list of significant materials handled and stored at the site (Industrial Permit, Section A(5)); a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and

particulate generating activities, and a description of significant spills and leaks, a list of all non-storm water discharges and their sources and a description of locations where soil erosion may occur (Industrial Permit, Section A(6)); and an assessment of potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective (Industrial Permit, Sections A(7) and (8)).

35.    Provision E(3) and Section B(1) of the Industrial Permit require dischargers to prepare and implement a monitoring and reporting program ("M&RP") no later than October 1, 1992 or prior to commencing industrial activities.

36.    The objective of the M&RP is to ensure that storm water discharges are in compliance with the Industrial Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. (Industrial Permit, Section B(2)).

37.    The M&RP must ensure that BMPs utilized at the facility are reducing or preventing pollutants in storm water discharges, and are evaluated whenever appropriate. (Industrial Permit, Section B(2)(a)).

38.    Sections B(3) through B(16) of the Industrial Permit set forth the M&RP requirements.

39.    Section B(3) of the Industrial Permit requires dischargers to conduct visual observations for the presence of unauthorized non-storm water discharges on a quarterly basis, to document the source of any discharge, and to report the presence of any discolorations, stains, odors, and floating materials in the discharge.

40.    Section B(4) of the Industrial Permit requires dischargers to visually observe storm water discharges at all discharge locations from one storm event per month during the wet season (October 1 - May 30) and to document the presence of any floating and suspended materials, oil and grease, discolorations, turbidity, or odor in the discharge, and the source of any pollutants.

/././

41.     Sections B(3)(d) and B(4)(c) of the Industrial Permit require dischargers to maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges.

42.     Section B(5) of the Industrial Permit requires dischargers to collect a sample from all discharge points during the first storm event of the wet season and during at least one other storm event of the wet season, for a total of two samples per wet season.

43.     Section B(5)(c) of the Industrial Permit requires dischargers to analyze each sample for pH, specific conductance, total suspended solids, total organic content, and for toxic chemicals and other pollutants likely to be present in significant quantities in the storm water discharged from the Sites.

44.     Dischargers must submit "Annual Reports" to the Regional Board by July 1 of each year. (Industrial Permit, Section B(14)).

## V.     STATEMENT OF FACTS

### A.     California Metals Facilities Locations

45.     CERF is informed, believes, and thereon alleges that the California Metals Facilities are in the business of receiving, sorting, storing, and processing scrap metals.

46.     CERF is informed, believes, and thereon alleges that the California Metals 297 S. Marshall Facility and the 636 Front Facility conduct business as almost one facility, storing and then transferring products between the two sites interchangeably.

47.     CERF is informed, believes, and thereon alleges that the 297 S. Marshall Facility is an approximately 38,000 square foot scrap metal recycling and processing facility. The 297 S. Marshall Facility is comprised of three separate operations: (1) a scrap yard which receives scrap metal from various commercial, industrial, and residential sources; (2) a computer surplus house where computers are broken down into parts and re-sold; (3) a new metal supply company where new metal bar, plate, and sheet stock is cut and sold. Storm water runoff flows to the southeast corner of the 297 S. Marshall Facility and conveys pollution off the site and into the municipal storm

drains. On the west side of the 297 S. Marshall Facility, the driveway leads directly onto S. Marshall Avenue, while storm water conveyed to the southeast corner is discharged onto Millar Avenue.

48.     CERF is informed, believes, and thereon alleges that the 636 Front Street Facility is an approximately 50,000 square foot scrap metal recycling and processing facility. It includes a large yard, an office building and several sheds. The California Metals Owners and/or Operators store scrap metal and other materials in huge piles in the scrap yard with no covering or containment. The driveway from the Site leads directly onto Front Street where the storm drains are located.

49.     CERF is informed, believes, and thereon alleges that the California Metals Facilities are open to the public to receive and recycle scrap metal.

50.     The California Metals Facilities discharge into storm drains that discharge into the San Diego River and ultimately the Pacific Ocean.

51.     The EPA promulgated regulations for the Section 402 NPDES permit program defining waters of the United States. (S*ee* 40 C.F.R. § 122.2). The EPA interprets waters of the United States to include not only traditionally navigable waters but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and other waters including intermittent streams that could affect interstate commerce. The CWA requires any person who discharges or proposes to discharge pollutants into waters of the United States to submit an NPDES permit application. (40 C.F.R. § 122.21).

52.     The Clean Water Act confers jurisdiction over non-navigable waters that are tributary to traditionally navigable waters where the non-navigable water at issue has a significant nexus to the navigable water. (*See Rapanos v. United States,* 547 U.S. 715 (2006)).  A significant nexus is established if the "[receiving waters], either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters." (*Id.* at 780).

/././

53.     A significant nexus is also established if waters that are tributary to navigable waters have flood control properties, including functions such as the reduction of flow, pollutant trapping, and nutrient recycling. (*Id.* at 783).

54.     Information available to CERF indicates that each of the surface waters into which the California Metals Facilities discharge polluted storm water are tributaries to traditional navigable waters, such as the San Diego River and the Pacific Ocean.

55.     CERF is informed and believes, and thereon alleges that the California Metals Facilities' polluted discharges cause and/or contribute to the impairment of water quality in the San Diego River. Elevated levels of enterococcus, fecal coliform, manganese, nitrogen, phosphorus, total dissolved solids, and toxicity, and low dissolved oxygen have resulted in the inability of the San Diego River to support its beneficial uses.

56.     Water Quality Standards are pollutant concentration levels determined by the State Board and the EPA to be protective of the beneficial uses of the receiving waters.  Discharges above Water Quality Standards contribute to the impairment of the receiving waters' beneficial uses.

57.     The applicable Water Quality Standards include, but are not limited to, those set out by the State of California in the Criteria for Priority Toxic Pollutants, 40 C.F.R. § 131.38 , ("California Toxics Rule" or "CTR") and in the Basin Plan. The CTR limits are as follows: lead – .065 milligrams per liter (mg/L); copper – .013 mg/L; zinc – .12 mg/L. These numeric criteria are set to protect human health and the environment in the State of California. The CTR limits represented are the maximum concentration levels permissible to achieve health and environmental protection goals.

58.     EPA Benchmarks are the pollutant concentrations above which EPA has determined are indicative of a facility not successfully developing or implementing BMPs that meet BAT for toxic pollutants and BCT for conventional pollutants. (See Multi-Sector General Permits for Stormwater Discharges Associated with Industrial

Activity (MSGP), 2008, §§6.2, 8.N). The benchmark values provide an appropriate level to determine whether a facility's storm water pollution prevention measures are successfully implemented. (MSGP Fact Sheet, p. 68). Failure to conduct and document corrective action and revision of control measures in response to benchmark exceedances constitutes a permit violation. (*Id*.).

59.     EPA has established the following benchmark values for Sector N, Scrap Recycling and Waste Recycling Facilities: total suspended solids – 100 mg/L;  iron – 1 mg/L; aluminum – 0.75 mg/L; zinc[1] – 0.04-.26 mg/L; copper – 0.0038-.0332 mg/L; total suspended solids (TSS) – 100 mg/L; lead – 0.014-.262 mg/L. (MSGP, §8.N.6).

60.     The Regional Board's Basin Plan establishes water quality objectives, implementation plans for point and nonpoint source discharges, and prohibitions, and furthers statewide plans and policies intended to preserve and enhance the beneficial uses of all waters in the San Diego region. (*See* Basin Plan at 1-1). The Basin Plan identifies several beneficial uses for regional waters, including for the San Diego River. (Basin Plan at Table 2-2 and 2-4). The Basin Plan establishes the following water quality objectives for the San Diego Hydrologic Unit: iron – .3 mg/L; pH – not less than 6.5 and not greater than 8.5.

**B.     The 297 S. Marshall Facility**

**i.     Past and Present Industrial Activity at the 297 S. Marshall Facility**

61.     CERF is informed, believes, and thereon alleges that in its Notice of Intent to Obtain Coverage under Industrial Permit submitted to the Regional Board, the California Metals Owner and/or Operators list their operations as Standard Industrial Classification ("SIC") code 5093 for facilities primarily engaged in assembling, breaking up, sorting, and wholesale distribution of scrap and waste materials (hereinafter "Scrap Metal Operation").

---

[1] The zinc, lead, and copper benchmarks are dependent on water hardness.

62.     CERF is informed, believes, and thereon alleges that at the 297 S. Marshall Facility, the California Metals Owners and/or Operators engage in the following industrial operations: metal scrap recycling, vehicle maintenance and repair work, sorting, processing, crushing and baling of ferrous and non-ferrous metals, storage of scrap metals, renovations, and shipping and receiving of containers. CERF is informed, believes, and thereon alleges that the California Metals Owners and/or Operators also store, handle, and/or transport hazardous waste such as waste oil and gasoline.

63.     The potential pollutant sources associated with the industrial activities at the 297 S. Marshall Facility include, but are not limited to: the scrap metal outdoor storage areas; parking areas; shipping and receiving areas; loading and unloading areas; maintenance areas; the operations building; the scrap metal and used appliance storage areas; the piles of turnings and cuttings; and the on-site material handling equipment such as forklifts.

64.     CERF is informed, believes, and thereon alleges that pollutants present in storm water discharged from the 297 S. Marshall Facility therefore include but are not limited to: toxic metals such as copper, iron, zinc, lead, cadmium and aluminum; petroleum products including oil, fuel, grease, transmission fluids, brake fluids, hydraulic oil and diesel fuel; chemical admixtures, battery fluids, refrigerator and other appliance fluids, acids and solvents; total suspended solids and pH-affecting substances; and fugitive and other dust, dirt and debris.

65.     Investigators for CERF have inspected the 297 S. Marshall Facility from the public sidewalk and from the street. These investigators have photographed ongoing and continuous violations of the Industrial Permit and Clean Water Act at the 297 S. Marshall Facility.

66.     Based upon CERF's investigation, CERF is informed and believes and thereon alleges that the California Metals 297 S. Marshall Owners and/or Operators store scrap metal and other materials in piles in the scrap yard with no covering or containment. These piles consist of, but are not limited to, scrap metal items such as

scrap auto parts, aluminum, crushed vehicles, and appliances such as used refrigerators, televisions, computers, barbeques, and air conditioners. Scrap metal and other materials are also stored in large uncovered bins with no secondary containment.

67.     CERF is informed and believes and thereon alleges that there are patches of oil-contaminated dirt, grease, dripping oil, and other pollutants at the 297 S. Marshall Facility.

68.     Based upon its investigations, CERF is informed and believes and thereon alleges that there are also metallic drums, dumpsters filled with scrap metal, and other containers stored in the operations yard that are uncovered and/or uncontained.

69.     CERF is informed and believes and thereon alleges that the driveways at the 297 S. Marshall Facility convey storm water pollution off the site and into area storm drains.

70.     CERF is informed and believes that the driveway on the west side of the 297 S. Marshall Facility along S. Marshall Avenue also lacks effective BMPs to control the flow of storm water from the operations and storage yard, and loading docks onto S. Marshall Avenue. As a result, oil and grease, metal particles, and other pollutants have been and continue to be tracked out of the 297 S. Marshall Facility's operations area onto S. Marshall Avenue and onto Millar Avenue. As noted above, large amounts of scrap materials are piled onsite, outside of cover, near and/or directly adjacent to the driveways leading onto S. Marshall Avenue. Further, dirt, oil, and grease, and other pollutants cover the floor of the operations area near or directly adjacent to the driveway leading to S. Marshall Avenue.

71.     As a result, CERF is informed and believes and thereon alleges that during rain events at the 297 S. Marshall Facility, storm water carries pollutants from the scrap metal piles, scrap metal stacked in bins and dumpsters, floor contaminants, equipment, uncontained metal drums, and other sources directly onto S. Marshall and Millar Avenue. After periods of rainfall, storm water from the 297 S. Marshall Facility discharges directly to storm drains located on S. Marshall and Millar Avenue.

72.     CERF is informed and believes and thereon alleges that the pollution control measures at the 297 S. Marshall Facility are ineffective in controlling the exposure of pollutant sources to storm water at the 297 S. Marshall Facility. The 297 S. Marshall Owners and/or Operators have virtually no storm water controls and BMPs in place to prevent storm water and non-storm water from contacting the pollutant sources at the storage areas, loading docks and driveways at the 297 S. Marshall Facility. No BMPs are in place to control discharges to Marshall Avenue or Millar Avenue.

73.     Based upon its investigations, CERF is informed and believes and thereon alleges that the California Metals Owners and/or Operators have not conducted the required storm water sampling at the 297 S. Marshall Facility for the 2009-2010 and 2013-2014 reporting years by failing to sample the required two storm events. CERF is informed and believes and thereon alleges that the 297 S. Marshall Facility has not conducted any of the required storm water sampling for the 2010-2011 reporting year.

74.     CERF is informed and believes and thereon alleges that there were 46 significant rain events during the 2009-2010 wet season and 48 significant rain events during the 2010-2011 wet season, during which the California Metals Owners and/or operators could have sampled the storm water. A significant rain event is defined by the EPA as a rainfall event generating 0.1 inches or more.

ii.     **The California Metals 297 S. Marshall Facility and its Associated Discharge of Pollutants**

75.     CERF is informed, believes, and thereon alleges that with every significant rain event, the California Metals 297 S. Marshall Facility discharges polluted storm water from the industrial activities at the facility via the City of El Cajon's storm drain system and into the Receiving Waters.

76.     CERF is informed, believes, and thereon alleges that the Receiving Waters into which the California Metals 297 S. Marshall Facility discharges polluted storm water are waters of the United States and therefore the Industrial Permit properly regulates discharges to those waters.

77.     Because discharges from the California Metals 297 S. Marshall Facility contain metals and acidic pH, the California Metals 297 S. Marshall Facility's polluted discharges cause and/or contribute to the impairment of water quality in the Receiving Waters.

78.     CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 297 S. Marshall Facility has exceeded the Benchmark value for copper established by the EPA as well as the CTR Water Quality Standards applicable to copper in California. For example, Defendants' annual report monitoring data indicates levels of copper at 110 mg/L which is more than 3,300 times the EPA Benchmark of 0.0332 mg/L.[2] (MSGP, § 8.N.6).  This reading is also more than 8,400 times the copper CTR limit of 0.013 mg/L.

79.     CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 297 S. Marshall Facility has exceeded the CTR Water Quality Standards applicable to lead in California. For example, Defendants' annual report monitoring data indicates levels of lead at 25 mg/L which is more than 384 times the CTR limit of .065 mg/L. This reading is also more than 95 times the EPA Benchmark value for lead of .262 mg/L.[3] (MSGP, § 8.N.6).

80.     CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 297 S. Marshall Facility has exceeded the CTR Water Quality Standards applicable to zinc in California. For example, Defendants' annual report monitoring data indicates levels of zinc at 410 mg/L which is more than 3400 times the CTR limit of .12 mg/L.  This reading is also more than 1576 times the EPA Benchmark value for zinc of .26 mg/L.[4] (MSGP, § 8.N.6).

/././

---

[2] This benchmark value is hardness-dependent. Assuming the highest water hardness range applies, the benchmark is .0332 mg/L.
[3] This benchmark value is hardness-dependent. Assuming the highest water hardness range applies, the benchmark is .262 mg/L.
[4] This benchmark value is hardness-dependent. Assuming the highest water hardness range applies, the benchmark is .26 mg/L.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

81.     CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 297 S. Marshall Facility has exceeded the Basin Plan Water Quality Standards applicable to iron in California. For example, Defendants' annual report monitoring data indicates levels of iron at 1,900 mg/L which is more than 6,300 times the Basin Plan limit of .3 mg/L. This reading is also more than 1,900 times the EPA Benchmark value for iron of 1.0 mg/L.[5] (MSGP, § 8.N.6).

82.     CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 297 S. Marshall Facility has exceeded the Basin Plan Water Quality Standards applicable to pH in California. For example, Defendants' annual report monitoring data indicates pH levels at 1.9 which is more than 40 times the Basin Plan lower limit of 6.5.

83.     CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 297 S. Marshall Facility has exceeded the EPA Benchmark value for aluminum. For example, Defendants' annual report monitoring data indicates levels of aluminum at 1,300 mg/L which is more than 1,730 times the EPA Benchmark value for aluminum of .75 mg/L. (MSGP, § 8.N.6).

84.     CERF is informed, believes, and thereon alleges that the storm water discharged from Defendants' 297 S. Marshall Facility has exceeded the EPA Benchmark value for Total Suspended Solids (TSS). For example, Defendants' annual report monitoring data indicates levels of TSS at 230 mg/L which is more than 2.3 times the EPA Benchmark value for TSS of 100mg/L. (MSGP, § 8.N.6).

85.     CERF is informed, believes, and thereon alleges that during every significant rain event that has occurred at the California Metals 297 S. Marshall Facility since June 27, 2009 through the present, Defendants have discharged and continue to discharge storm water from the California Metals 297 S. Marshall Facility that contains

---

[5] This benchmark value is hardness-dependent. Assuming the highest water hardness range applies, the benchmark is .26 mg/L.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

1    pollutants at levels in violation of the prohibitions and limitations set forth in the

2    Industrial Permit and other applicable Water Quality Standards.

3        86.    CERF is informed, believes, and thereon alleges from visual observations,

4    sample results, and investigations available to CERF that the California Metals Owners

5    and/or Operators have failed and continue to fail to develop and/or implement adequate

6    BMPs to prevent the discharge of polluted storm water from the California Metals 297

7    S. Marshall Facility. The inadequacy of the BMPs at the California Metals 297 S.

8    Marshall Facility is a result of the California Metals Owners and/or Operators' failure to

9    develop and implement an adequate SWPPP and companion M&RP for this Site.

10   Therefore, storm water discharges from the California Metals 297 S. Marshall Facility

11   contain pollutant concentration levels that are consistently above both EPA Benchmarks

12   and applicable Water Quality Standards.

13       87.    CERF is informed, believes, and thereon alleges that since at least June 27,

14   2009 through the present, Defendants have failed to develop and implement BMPs that

15   meet the standards of BAT/BCT at the California Metals 297 S. Marshall Facility in

16   violation of Effluent Limitation B(3) of the Industrial Permit. Each day that Defendants

17   have failed and continue to fail to implement adequate BMPs to achieve BAT/BCT

18   constitutes a separate violation of the Industrial Permit and the CWA.

19       88.    Based on its investigation of the California Metals 297 S. Marshall Facility,

20   CERF is informed and believes that Defendants have failed to develop and implement

21   an adequate SWPPP since at least June 27, 2009 through the present. Each day that

22   Defendants have failed and continue to fail to implement an adequate SWPPP

23   constitutes a separate violation of the Industrial Permit and the CWA.

24       89.    Based on its investigation of the California Metals 297 S. Marshall Facility,

25   CERF is informed and believes that Defendants have failed to develop and implement

26   an adequate M&RP since at least June 27, 2009 through the present. Each day that

27   Defendants have failed and continue to fail to implement an adequate M&RP constitutes

28   a separate violation of the Industrial Permit and the CWA.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

90.     CERF is informed and believes that Defendants have not successfully sampled and reported during the 2009-2010, 2010-2011 and 2013-2014 wet seasons, despite there being numerous rain events sufficient to generate runoff occurring during the business hours at the California Metals 297 S. Marshall Facility. Accordingly, the California Metals Owners and/or Operators have violated the Industrial Permit and the CWA for failing to sample and report as required, or for falsely reporting that no discharges occurred that they could have sampled.

91.     CERF is informed and believes that Defendants have failed to submit true and correct annual reports to the Regional Board by July 1 of 2010 in violation of Section B(14) of the Industrial Permit. Each day that Defendants have operated the California Metals1760 Facility without meeting this reporting requirement of the Permit constitutes a separate violation of the Industrial Permit and the CWA.

92.     CERF is informed and believes that Defendants have failed to submit written reports to the Regional Board identifying additional BMPs necessary to achieve BAT/BCT at the California Metals 297 S. Marshall Facility since at least June 27, 2009 in violation of Receiving Water Limitations C(3) and C(4). Each day that Defendants have operated the California Metals 297 S. Marshall Facility without meeting this reporting requirement of the Industrial Permit constitutes a separate violation of the Industrial Permit and the CWA.

93.     CERF is informed and believes that since at least June 27, 2009, Defendants have failed to submit written reports to the Regional Board that address Defendants' non-compliance with the terms of the Industrial Permit in violation of Section C(11)(d) of the Permit. Each day that Defendants have operated the California Metals 297 S. Marshall Facility without meeting this reporting requirement of the Industrial Permit constitutes a separate violation of the General Industrial Permit and the CWA.

/./.

/./.

/./.

C.    **The California Metals 636 Front Street Facility**

    i        **The California Metals 636 Front Street Facility's Past and**
              **Present Industrial Activities**

94.    In their Notice of Intent to Obtain Coverage under Industrial Permit submitted to the Regional Board, California Metals, Inc. lists its operations as SIC code 5093 for facilities primarily engaged in assembling, breaking up, sorting, and wholesale distribution of scrap and waste materials.

95.    CERF is informed, believes, and thereon alleges that the California Metals 636 Front Facility Owners and/or Operators engage in the following industrial operations: metal scrap recycling, fueling, vehicle maintenance and repair work, sorting and processing of ferrous and non-ferrous metals, storage of scrap metals, car body smashing, industrial roll-off service, and shipping and receiving of scrap metals. The California Metals 636 Front Owners and/or Operators also store, handle, and/or transport hazardous waste such as waste oil and gasoline.

96.    CERF is informed, believes, and thereon alleges that the potential sources of pollutants associated with the industrial activities at the California Metals 636 Front Facility include, but are not limited to: the scrap metal ferrous and non-ferrous outdoor storage areas; parking areas; shipping and receiving areas; loading and unloading areas; maintenance areas; the operations building; the scrap metal and used appliance storage areas; the piles of ferrous and non-ferrous turnings and cuttings; and the on-site material handling equipment such as forklifts.

97.    CERF is informed, believes, and thereon alleges that the pollutants associated with the California Metals 636 Front Facility include but are not limited to: toxic metals such as copper, iron, zinc, lead, cadmium and aluminum; petroleum products including oil, fuel, grease, transmission fluids, brake fluids, hydraulic oil and diesel fuel; chemical admixtures, battery fluids, refrigerator and other appliance fluids, acids and solvents; total suspended solids and pH-affecting substances; and fugitive and other dust, dirt and debris.

98.     Investigators for CERF have inspected the California Metals 636 Front Facility from the public sidewalk and from the street. These investigators have photographed ongoing and continuous violations of the Industrial Permit and the CWA at the California Metals 636 Front Facility as described in the Notice Letter and this complaint.

99.     CERF's investigation has revealed that the California Metals Owners and/or Operators store scrap metal and other materials in huge piles in the scrap yard with no covering or containment. CERF is informed, believes, and thereon alleges that these piles consist of, but are not limited to, metal turnings and shavings, scrap auto parts, crushed vehicles and vehicle body parts, radiators, electronics and appliances such as used refrigerators, washing machines, air conditioners, and the like. Scrap metal and other materials are stored in large piles and uncovered bins with no secondary containment.

100.   CERF is informed, believes, and thereon alleges that a layer of oil-contaminated dirt and other pollutants covers the ground and is tracked throughout the California Metals 636 Front Facility.

101.   CERF is informed, believes, and thereon alleges that there are 55-gallon drums and other containers located at the California Metals 636 Front Facility that are uncovered and uncontained.

102.    CERF is informed, believes, and thereon alleges that the California Metals 636 Front Facility yard is paved, and dirt, debris, and staining from spills of petroleum and other pollutants cover the pavement at the California Metals 636 Front Facility.

103.   CERF is informed, believes, and thereon alleges that the driveway from the operations yard leads directly onto Front Street. The California Metals Owners and/or Operators have not installed any BMPs on the driveways to prevent pollutants from leaving the operations yard, loading areas, the driveway as well as other ingress and egress points leading onto Front Street. As a result, oil and grease, metal particles, and

other pollutants have been and continue to be tracked out of the California Metals 636 Front Facility's operations area onto Front Street.

104.   CERF is informed, believes, and thereon alleges that large amounts of scrap materials are piled in the operations area, outside of cover, near and/or directly adjacent to driveways leading onto Front Street.

105.   CERF is informed, believes,  and thereon alleges that dirt, oil and grease, scrap metal pieces, and other pollutants litter the floor of the operations area near or directly adjacent to the driveway leading to Front Street. As a result, during rain events, storm water carries pollutants from the scrap metal piles, scrap metal stacked in bins, floor contaminants, equipment, and other sources directly onto Front Street. After periods of rainfall, storm water from the California Metals 636 Front Facility discharges directly to storm drains located on Front Street.

106.   CERF is informed, believes, and thereon alleges that the pollution control measures at the California Metals 636 Front Facility are ineffective in controlling the exposure of pollutant sources to storm water at the California Metals 636 Front Facility. The California Metals Owners and/or Operators have virtually no storm water controls or BMPs in place to prevent storm water and non-storm water from contacting the pollutant sources at the storage areas, loading docks and driveways at the California Metals 636 Front Facility. No BMPs are in place to control discharges to Front Street, which constitute the vast majority of discharges from the California Metals 636 Front Facility.

107.   CERF is informed, believes, and thereon alleges that the California Metals Owners and/or Operators have not conducted adequate storm water sampling at the California Metals 636 Front Facility for the 2009-2010, 2010-2011 and 2013-2014 wet seasons and reporting years, despite the requirement that it conduct such sampling during no less than two storm events every wet season.

108.   CERF is informed, believes, and thereon alleges that based on both the evidence from visual observations and CERF's investigations that the California Metals

1   Owners and/or Operators have failed and continue to fail to develop and/or implement

2   adequate BMPs to prevent the discharge of polluted storm water and non-storm water

3   from the California Metals 636 Front Facility.

4          **ii.**    **The California Metals 636 Front Facility's Discharge of Pollutants**

5       109.   CERF is informed, believes, and thereon alleges that with every significant

6   rain event, the California Metals 636 Front Facility discharges polluted storm water

7   from the industrial activities at the facility via the City of El Cajon's storm drain system

8   and into the Receiving Waters.

9       110.   CERF is informed, believes, and thereon alleges that the Receiving Waters

10   into which the California Metals 636 Front Facility discharges polluted storm water are

11   waters of the United States and therefore the Industrial Permit properly regulates

12   discharges to those waters.

13       111.   Because discharges from the California Metals 636 Front Facility contain

14   metals and high pH, the California Metals 636 Front Street Facility's polluted

15   discharges cause and/or contribute to the impairment of water quality in these

16   Receiving Waters.

17       112.   CERF is informed, believes, and thereon alleges that the storm water

18   discharged from Defendants' 636 Front Facility has exceeded the Benchmark value for

19   copper established by the EPA as well as the CTR Water Quality Standards applicable

20   to copper in California. For example, Defendants' annual report monitoring data

21   indicates levels of copper at 3,600 mg/L which is more than 108,000 times the EPA

22   Benchmark of 0.0332 mg/L.[6] (MSGP, § 8.N.6). This reading is also more than 276,000

23   times the copper CTR limit of 0.013 mg/L.

24       113.   CERF is informed, believes, and thereon alleges that the storm water

25   discharged from Defendants' 636 Front Facility has exceeded the CTR Water Quality

26   Standards applicable to lead in California. For example, Defendants' annual report

27

28   [6] This benchmark value is hardness-dependent. Assuming the highest water hardness range applies, the benchmark is .0332 mg/L.

monitoring data indicates levels of lead at 690 mg/L which is more than 10,600 times the CTR limit of .065 mg/L. This reading is also more than 2,600 times the EPA Benchmark value for lead of .262 mg/L.[7] (MSGP, § 8.N.6).

114.   CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 636 Front Facility has exceeded the CTR Water Quality Standards applicable to zinc in California. For example, Defendants' annual report monitoring data indicates levels of zinc at 2,700 mg/L which is more than 22,500 times the CTR limit of .12 mg/L. This reading is also more than 10,380 times the EPA Benchmark value for zinc of .26 mg/L.[8] (MSGP, § 8.N.6).

115.   CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 636 Front Facility has exceeded the Basin Plan Water Quality Standards applicable to iron in California. For example, Defendants' annual report monitoring data indicates levels of iron at 7,400 mg/L which is more than 24,600 times the Basin Plan limit of .3 mg/L. This reading is also more than 7,400 times the EPA Benchmark value for iron of 1.0 mg/L.[9] (MSGP, § 8.N.6).

116.   CERF is informed, believes, and thereon alleges that the storm water discharged from the Defendants' 636 Front Facility has exceeded the Basin Plan Water Quality Standards applicable to pH in California. For example, Defendants' annual report monitoring data indicates pH levels at 8.7, which is more than the Basin Plan upper limit of 8.5.

117.   CERF is informed, believes, and thereon alleges that the storm water discharged from Defendants' 636 Front Facility has exceeded the EPA Benchmark value for aluminum. For example, Defendants' annual report monitoring data indicates

---

[7] This benchmark value is hardness-dependent. Assuming the highest water hardness range applies, the benchmark is .262 mg/L.
[8] This benchmark value is hardness-dependent. Assuming the highest water hardness range applies, the benchmark is .26 mg/L.
[9] This benchmark value is hardness-dependent. Assuming the highest water hardness range applies, the benchmark is .26 mg/L.

levels of aluminum at 4,700 mg/L which is more than 6,260 times the EPA Benchmark value for aluminum of .75 mg/L. (MSGP, § 8.N.6).

118.   CERF is informed, believes, and thereon alleges that the storm water discharged from Defendants' 636 Front Facility has exceeded the EPA Benchmark value for Total Suspended Solids (TSS). For example, Defendants' annual report monitoring data indicates levels of TSS at 330 mg/L which is more than 3 times the EPA Benchmark value for TSS of 100mg/L. (MSGP, § 8.N.6).

119.   CERF is informed, believes, and thereon alleges that during every significant rain event that has occurred at the California Metals 636 Front Facility since June 27, 2009 through the present, Defendants have discharged and continue to discharge storm water from the California Metals 636 Front Facility that contains pollutants at levels in violation of the prohibitions and limitations set forth in the Industrial Permit and other applicable Water Quality Standards.

120.   CERF is informed, believes, and thereon alleges from visual observations, sample results, and investigations available to CERF that the California Metals Owners and/or Operators have failed and continue to fail to develop and/or implement adequate BMPs to prevent the discharge of polluted storm water from the California Metals 636 Front Facility. The inadequacy of the BMPs at the California Metals 636 Front Facility is a result of the California Metals Owners and/or Operators' failure to develop and implement an adequate SWPPP and companion M&RP for the California Metals 636 Front Facility. Therefore, storm water discharges from the California Metals 636 Front Facility contain pollutant concentration levels that are consistently above both EPA Benchmarks and applicable Water Quality Standards.

121.   CERF is informed, believes, and thereon alleges that since at least June 27, 2009 through the present, Defendants have failed to develop and implement BMPs that meet the standards of BAT/BCT at the California Metals 636 Front Facility in violation of Effluent Limitation B(3) of the Industrial Permit. Each day that Defendants have failed and continue to fail to implement adequate BMPs to achieve BAT/BCT

constitutes a separate violation of the Industrial Permit and the CWA.

122.  Based on its investigation of the California Metals 636 Front Facility, CERF is informed and believes that Defendants have failed to develop and implement an adequate SWPPP since at least June 27, 2009 through the present. Each day that Defendants have failed and continue to fail to implement an adequate SWPPP constitutes a separate violation of the Industrial Permit and the CWA.

123.  Based on its investigation of the California Metals 636 Front Facility, CERF is informed and believes that Defendants have failed to develop and implement an adequate M&RP since at least June 27, 2009 through the present. Each day that Defendants have failed and continue to fail to implement an adequate M&RP constitutes a separate violation of the Industrial Permit and the CWA.

124.  CERF is informed and believes that Defendants have not successfully sampled and reported during the 2009-2010, 2010-2011 and 2013-2014 wet seasons, despite there being numerous rain events sufficient to generate runoff occurring during business hours at the California Metals 636 Front Facility. Accordingly, the California Metals Owners and/or Operators have violated the Industrial Permit and the CWA for failing to sample and report as required, or for falsely reporting that no discharges occurred that they could have sampled.

125.  CERF is informed and believes that Defendants have failed to submit true and correct annual reports to the Regional Board by July 1 of 2010 in violation of Section B(14) of the Industrial Permit. Each day that Defendants have operated the California Metals 636 Front Facility without meeting this reporting requirement of the Permit constitutes a separate violation of the Industrial Permit and the CWA.

126.  CERF is informed and believes that Defendants have failed to submit written reports to the Regional Board identifying additional BMPs necessary to achieve BAT/BCT at the California Metals 636 Front Facility since at least June 27, 2009  in violation of Receiving Water Limitations C(3) and C(4). Each day that Defendants have operated the California Metals 636 Front Facility without meeting this reporting

1   requirement of the Industrial Permit constitutes a separate violation of the Industrial

2   Permit and the CWA.

3       127.   CERF is informed and believes that since at least June 27, 2009, Defendants

4   have failed to submit written reports to the Regional Board that address Defendants'

5   non-compliance with the terms of the Industrial Permit in violation of Section C(11)(d)

6   of the Permit. Each day that Defendants have operated the California Metals 636 Front

7   Facility without meeting this reporting requirement of the Industrial Permit constitutes a

8   separate violation of the General Industrial Permit and the CWA.

9       **D.    California Metals Owners and/or Operators Monitoring Program**

10      128.   CERF is informed and believes that the California Metals Facilities are

11  required to sample at least two storm events every rainy season in accordance with the

12  sampling and analysis procedures set forth at Section B(5). These procedures require

13  that a sample be taken from all discharge locations at the California Metals Facilities

14  and that at least two samples are taken during the wet season: (1) one in the first storm

15  event of a particular wet season; and (2) at least one other storm event in the wet

16  season. (Industrial Permit, Sections B(5) and B(7)).

17      129.   CERF is informed and believes that despite the extremely high levels of

18  pollutants reported in the samples that were taken at the California Metals Facilities, the

19  California Metals Owners and/or Operators have not sampled as required.

20      130.   CERF is informed and believes, and thereon alleges that efforts were not

21  made to take all required samples at all the required locations at the California Metals

22  Facilities in 2009-2010, 2010-2011 and 2013-2014 sampling years.

23      131.   CERF is informed and believes, and thereon alleges that, as a result of

24  Defendants' failure to evaluate the effectiveness of their existing BMPs, their failure to

25  implement BAT and BCT at the California Metals Facilities, their failure to fully

26  monitor the quality of storm water discharges from the California Metals Facilities, and

27  their failure to maintain an adequate SWPPP and monitoring program for the Facility,

28  storm water containing pollutants harmful to fish, plant and bird life, and human health

is being discharged during every rain event from the Facility directly to storm channels or drains that flow into the Receiving Waters.

132.   Information available to Plaintiff indicates that Defendants have not submitted any reports pursuant to Receiving Water Limitation C(4)(a) within 60-days of becoming aware of levels in their storm water exceeding the EPA Benchmark values or applicable Water Quality Standards. Information available to Plaintiff indicates that Defendants have not filed any reports describing the California Metals Facilities' noncompliance with the Industrial Permit pursuant to Section C(11)(d) of the Industrial Permit.

133.   Information available to Plaintiff indicates that Defendants have not fulfilled the requirements set forth in the Industrial Permit for discharges from the California Metals Facilities due to their continued discharge of contaminated storm water. Information available to Plaintiff indicates the continued existence of unlawful storm water and non-storm water discharges at the California Metals Facilities.

## VI.      CLAIMS FOR RELIEF

<u>**FIRST CAUSE OF ACTION**</u>
**Discharges of Contaminated Storm Water in**
**Violation of the Industrial Permit's Discharge Prohibitions and**
**Receiving Water Limitations and the Clean Water Act**
**(Violations of 33 U.S.C. §§ 1311(a), 1342)**

### A. California Metals 297 S. Marshall Facility

134.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

135.   Plaintiff is informed and believes, and thereon alleges, that as a result of the operations at the California Metals 297 S. Marshall Facility, during every significant rain event, storm water containing pollutants harmful to fish, plant, bird life, and human health is discharged from the California Metals1760 Facility to the Receiving Waters.

136.   Plaintiff is informed and believes, and thereon alleges, that the Defendants' discharges of contaminated storm water have caused and continue to cause pollution,

contamination, and/or nuisance to the waters of the United States in violation of Discharge Prohibition A(2) of the Industrial Permit.

137.   Plaintiff is informed and believes, and thereon alleges, that these discharges of contaminated storm water have, and continue to, adversely affect human health and the environment in violation of Receiving Water Limitation C(1) of the Industrial Permit.

138.   Plaintiff is informed and believes, and thereon alleges, that these discharges of contaminated storm water have caused or contributed to and continue to cause or contribute to an exceedance of Water Quality Standards in violation of Receiving Water Limitation C(2) of the Industrial Permit.

139.   Plaintiff is informed and believes, and thereon alleges, that from at least June 27, 2009 through the present, Defendants have discharged, and continue to discharge, contaminated storm water from the California Metals 297 S. Marshall Facility to Receiving Waters in violation of the prohibitions of the Industrial Permit. Thus, the California Metals Owners and/or Operators are liable for civil penalties for 40 violations of the Industrial Permit and the CWA.

140.   Plaintiff is informed and believes, and thereon alleges, that Defendants' violations of the Industrial Permit and the CWA are ongoing.

141.   Defendants will continue to be in violation of the Industrial Permit requirements each day the California Metals 297 S. Marshall Facility discharges contaminated storm water in violation of Industrial Permit prohibitions.

142.   Every day that Defendants have discharged and/or continue to discharge polluted storm water from the California Metals 297 S. Marshall Facility in violation of the Industrial Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

143.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009, to the present pursuant to Sections 309(d) and 505 of the CWA, 33

U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

144.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

**B. California Metals 636 Front Facility**

145.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

146.   Plaintiff is informed and believes, and thereon alleges, that as a result of the operations at the California Metals 636 Front Facility, during every significant rain event, storm water containing pollutants harmful to fish, plant, bird life, and human health is discharged from the California Metals 636 Front Facility to the Receiving Waters.

147.   Plaintiff is informed and believes, and thereon alleges, that the Defendants' discharges of contaminated storm water have caused and continue to cause pollution, contamination, and/or nuisance to the waters of the United States in violation of Discharge Prohibition A(2) of the Industrial Permit.

148.   Plaintiff is informed and believes, and thereon alleges, that these discharges of contaminated storm water have, and continue to, adversely affect human health and the environment in violation of Receiving Water Limitation C(1) of the Industrial Permit.

149.   Plaintiff is informed and believes, and thereon alleges, that these discharges of contaminated storm water have caused or contributed to and continue to cause or contribute to an exceedance of Water Quality Standards in violation of Receiving Water Limitation C(2) of the Industrial Permit.

150.   Plaintiff is informed and believes, and thereon alleges, that from at least June 27, 2009, through the present, Defendants have discharged, and continue to

discharge, contaminated storm water from the California Metals 636 Front Facility to Receiving Waters in violation of the prohibitions of the Industrial Permit. Thus, the California Metals Owners and/or Operators are liable for civil penalties for 37 violations of the Industrial Permit and the CWA.

151.   Plaintiff is informed and believes, and thereon alleges, that Defendants' violations of the Industrial Permit and the CWA are ongoing.

152.   Defendants will continue to be in violation of the Industrial Permit requirements each day the California Metals 636 Front Facility discharges contaminated storm water in violation of Industrial Permit prohibitions.

153.   Every day that Defendants have discharged and/or continue to discharge polluted storm water from the California Metals 636 Front Facility in violation of the Industrial Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

154.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009, to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

155.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

/././
/././
/././
/././
/././

## **SECOND CAUSE OF ACTION**

**Failure to Develop and/or Implement BMPs that Achieve Compliance with Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology In Violation of the Industrial Permit and the Clean Water Act (Violations of 33 U.S.C. §§1311, 1342)**

### A. California Metals 297 S. Marshall Facility

156.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

157.   Plaintiff is informed and believes, and thereon alleges that Defendants have failed to develop and/or implement BMPs that achieve compliance with BAT/BCT requirements of the Industrial Permit and the CWA.

158.   Sampling of the California Metals 297 S. Marshall Facility's storm water discharges as well as CERF's observations and photographs of the California Metals 297 S. Marshall Facility demonstrate that the California Metals Owners and/or Operators have not developed and/or implemented BMPs that meet the standards of BAT/BCT. Thus, the California Metals Owners and/or Operators are in violation of Effluent Limitation (B)(3) of the Industrial Permit.

159.   Plaintiff is informed and believes and thereon alleges that Defendants have been in daily and continuous violation of the BAT/BCT requirements of the Industrial Permit and the CWA every day since at least June 27, 2009.

160.   Plaintiff is informed and believes and thereon alleges that Defendants' violations of the Industrial Permit Effluent Limitations and the CWA are ongoing.

161.   Defendants will continue to be in violation every day the California Metals 297 S. Marshall facility operates without adequately developing and/or implementing BMPs that achieve BAT/BCT to prevent or reduce pollutants associated with industrial activity in storm water discharges at the California Metals 297 S. Marshall Facility.

162.   Every day that Defendants operate the California Metals 297 S. Marshall Facility without adequately developing and/or implementing BMPs that achieve

BAT/BCT in violation of the Industrial Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

163.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

164.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

**B. California Metals 636 Front Facility**

165.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

166.   Plaintiff is informed and believes, and thereon alleges that Defendants have failed to develop and/or implement BMPs that achieve compliance with BAT/BCT requirements of the Industrial Permit and the CWA.

167.   Sampling of the California Metals 636 Front Facility's storm water discharges as well as CERF's observations and photographs of the California Metals 636 Front Facility demonstrate that the California Metals Owners and/or Operators have not developed and/or implemented BMPs that meet the standards of BAT/BCT. Thus, the California Metals Owners and/or Operators are in violation of Effluent Limitation (B)(3) of the Industrial Permit.

168.   Plaintiff is informed and believes and thereon alleges that Defendants have been in daily and continuous violation of the BAT/BCT requirements of the Industrial Permit and the CWA every day since at least June 27, 2009.

169.   Plaintiff is informed and believes and thereon alleges that Defendants' violations of the Industrial Permit Effluent Limitations and the CWA are ongoing.

170.   Defendants will continue to be in violation every day the California Metals 636 Front Facility operates without adequately developing and/or implementing BMPs that achieve BAT/BCT to prevent or reduce pollutants associated with industrial activity in storm water discharges at the California Metals 636 Front Facility.

171.   Every day that Defendants operate the California Metals 636 Front Facility without adequately developing and/or implementing BMPs that achieve BAT/BCT in violation of the Industrial Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

172.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

173.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

## THIRD CAUSE OF ACTION

**Failure to Develop and/or Implement an Adequate
Storm Water Pollution Prevention Plan
in Violation of the Industrial Permit and Clean Water Act
(Violations of 33 U.S.C. §§ 1311, 1342)**

### A. California Metals 297 S. Marshall Facility

174.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

175.   Plaintiff is informed and believes, and thereon alleges that Defendants have failed to develop and/or implement an adequate SWPPP for the California Metals 297 S.

Marshall Facility that meets the requirements set out in Section A and Provision E of the Industrial Permit.

176.   Defendants have been in violation of the SWPPP requirements every day since at least June 27, 2009.

177.   Defendants' violations of the Industrial Permit and the CWA are ongoing.

178.   Defendants will continue to be in violation of the SWPPP requirements every day the California Metals 297 S. Marshall Facility operates with an inadequately developed and/or implemented SWPPP for the California Metals 297 S. Marshall Facility.

179.   Each day that Defendants operate the California Metals 297 S. Marshall Facility without developing and/or implementing an adequate SWPPP is a separate and distinct violation of Section 301(a) of the CWA 33 U.S.C. §1311(a).

180.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

181.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

### B.   California Metals 636 Front Facility

182.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

183.   Plaintiff is informed and believes, and thereon alleges that Defendants have failed to develop and/or implement an adequate SWPPP for the California Metals 636 Front Facility that meets the requirements set out in Section A and Provision E of the Industrial Permit.

184.   Defendants have been in violation of the SWPPP requirements every day since at least June 27, 2009.

185.   Defendants' violations of the Industrial Permit and the CWA are ongoing.

186.   Defendants will continue to be in violation of the SWPPP requirements every day the California Metals 636 Front Facility operates with an inadequately developed and/or implemented SWPPP for the California Metals 636 Front Facility.

187.   Each day that Defendants operate the California Metals 636 Front Facility without developing and/or implementing an adequate SWPPP is a separate and distinct violation of Section 301(a) of the CWA 33 U.S.C. §1311(a).

188.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

189.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

## FOURTH CAUSE OF ACTION

### Failure to Develop and/or Implement an
### Adequate Monitoring and Reporting Program
### In Violation of the Industrial Permit and the Clean Water Act
### (Violations of 33 U.S.C. §§ 1311, 1342)

**A.    California Metals 297 S. Marshall Facility**

190.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

/././

/././

191.   Plaintiff is informed and believes, and thereon alleges that Defendants have failed to develop and/or implement an adequate M&RP for the California Metals 297 S. Marshall Facility as required by Section B and Provision E(3) of the Industrial Permit.

192.   Plaintiff is informed and believes, and thereon alleges, that Defendants conditions at the California Metals 297 S. Marshall Facility, as determined via sampling of storm water discharges from the California Metals 297 S. Marshall Facility, and the annual reports submitted by the California Metals Owners and/or Operators all demonstrate that the California Metals 297 S. Marshall Facility has not developed and/or implemented an adequate M&RP that meets the requirements of the Industrial Permit in violation of Section B of the Industrial Permit.

193.   Plaintiff is informed and believes, and thereon alleges that Defendants have failed and continue to fail to collect samples from all discharge points during sampled storm events in violation of Section B(5) of the Industrial Permit.

194.   Plaintiff is informed and believes, and thereon alleges that Defendants have failed and continue to fail to identify inadequacies in their SWPPP and their BMPs in violation of Section B(2) of the Industrial Permit.

195.   Defendants' violations of the Industrial Permit and the CWA are ongoing.

196.   Defendants will continue to be in violation of the Industrial Permit and the CWA each day the California Metals 297 S. Marshall Facility operates with an inadequately developed and/or implemented M&RP.

197.   Each day Defendants operate the California Metals 297 S. Marshall Facility without developing and/or implementing an adequate M&RP for the California Metals 297 S. Marshall Facility is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. §1311(a).

198.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for

1  Inflation, 40 C.F.R. §12.4.

2     199.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. §

3  1365(a). Continuing commission of the acts and omissions alleged above would

4  irreparably harm Plaintiff and the citizens of the State of California, for which harm

5  they have no plain, speedy, or adequate remedy at law.

6     Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

7  **B.     California Metals 636 Front Facility**

8     200.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

9     201.   Plaintiff is informed and believes, and thereon alleges that Defendants have

10  failed to develop and/or implement an adequate M&RP for the California Metals 636

11  Front Facility as required by Section B and Provision E(3) of the Industrial Permit.

12     202.   Plaintiff is informed and believes, and thereon alleges, that Defendants

13  conditions at the California Metals 636 Front Facility, as determined via sampling of

14  storm water discharges from the California Metals 636 Front Facility, and the annual

15  reports submitted by the California Metals Owners and/or Operators all demonstrate that

16  the California Metals 636 Front Facility has not developed and/or implemented an

17  adequate M&RP that meets the requirements of the Industrial Permit in violation of

18  Section B of the Industrial Permit.

19     203.   Plaintiff is informed and believes, and thereon alleges that Defendants have

20  failed and continue to fail to collect samples from all discharge points during sampled

21  storm events in violation of Section B(5) of the Industrial Permit.

22     204.   Plaintiff is informed and believes, and thereon alleges that Defendants have

23  failed and continue to fail to identify inadequacies in their SWPPP and their BMPs in

24  violation of Section B(2) of the Industrial Permit.

25     205.   Defendants' violations of the Industrial Permit and the CWA are ongoing.

26     206.   Defendants will continue to be in violation of the Industrial Permit and the

27  CWA each day the California Metals 636 Front Facility operates with an inadequately

28  developed and/or implemented M&RP.

207.   Each day Defendants operate the California Metals 636 Front Facility without developing and/or implementing an adequate M&RP for the California Metals 636 Front Facility is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. §1311(a).

208.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

209.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

## FIFTH CAUSE OF ACTION
### Failure to Conduct Required Rain Event Sampling in Violation of the Industrial Permit

**A.     California Metals 297 S. Marshall Facility**

210.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

211.   Plaintiff is informed and believes, and thereon alleges, that the Defendants are in violation of Industrial Permit Section B(7) and B(5) by failing to collect at least two samples of storm water runoff, including one set of samples during the first storm event of the wet season.

212.   Plaintiff is informed and believes, and thereon alleges, that Defendants failed to collect any samples during the 2010-2011 wet season, and failed to collect two samples during the 2009-2010 and 2013-2014 wet seasons.

/././

/././

213.   Information available to CERF indicates that over 30 qualifying rain events occurred in 2009-2010, 17 qualifying rain events in 2010-2011, and 12 qualifying rain events in the 2013-2014 wet seasons.

214.   Defendants have been in violation of the Industrial Permit and the CWA for each day the California Metals 297 S. Marshall Facility operates without sampling as required by the Industrial Permit.

215.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the presents, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

216.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. §1365(a).  Continuing commission of the omissions alleged above would irreparably harm the Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

**B.   California Metals 636 Front Facility**

217.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

218.   Plaintiff is informed and believes, and thereon alleges, that the Defendants are in violation of Industrial Permit Section B(7) and B(5) by failing to collect at least two samples of storm water runoff, including one set of samples during the first storm event of the wet season.

219.   Plaintiff is informed and believes, and thereon alleges, that Defendants failed to collect any samples during the 2010-2011 wet season, and failed to collect two samples during the 2009-2010 and 2013-2014 wet seasons.

220.   Information available to CERF indicates that over 30 qualifying rain events occurred in 2009-2010, 17 qualifying rain events in 2010-2011, and 12 qualifying rain events in the 2013-2014 wet seasons.

221.   Defendants have been in violation of the Industrial Permit and the CWA for each day the California Metals 636 Front Facility operates without sampling as required by the Industrial Permit.

222.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

223.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. §1365(a).  Continuing commission of the omissions alleged above would irreparably harm the Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

## SIXTH CAUSE OF ACTION
**Failure to Complete and/or Submit Reports in
Violation of the Industrial Permit**
### A.    California Metals 297 S. Marshall Facility

224.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

225.   Plaintiff is informed and believes, and thereon alleges, that Defendants have failed to complete and/or submit annual reports to the Regional Board in violation of Section B(14) of the Industrial Permit.

226.   Plaintiff is informed and believes, and thereon alleges, that Defendants' annual reports did not meet the monitoring and reporting requirements of the Industrial Permit in violation of Section B(13) and B(14) of the Industrial Permit.

227.    Plaintiff is informed and believes, and thereon alleges, that the Defendants' annual reports were inaccurate and/or did not include a complete Annual Comprehensive Site Evaluation in violation of Section A(9) of the Industrial Permit.

/././

228.   Plaintiff is informed and believes, and thereon alleges, that Defendants' annual reports were inaccurate and stated that the SWPPP's BMPs address existing potential pollutant sources when they did not, in violation of the Industrial Permit Section B.

229.   Plaintiff is informed and believes, and thereon alleges, that Defendants' annual reports were false and stated that the SWPPP was up to date when it was not, in violation of Section B of the Industrial Permit.

230.   Plaintiff is informed and believes, and thereon alleges, that Defendants failed to submit a written report identifying what additional BMPs will be implemented to achieve Water Quality Standards even though the Defendants discharge exceeded receiving Water Quality Standards, in violation of  Receiving Water Limitations C(3) and C(4) of the Industrial Permit.

231.   Plaintiff is informed and believes, and thereon alleges, that Defendants' discharges of contaminated storm water are causing or contributing to exceedances of applicable Water Quality Standards contained in a Statewide Water Quality Control Plan, and/or the discharge prohibitions set forth in the Chapter 3 of the Basin Plan, in violation of Receiving Water Limitation B(2) of the Industrial Permit.

232.   Defendants have been in violation of the Industrial Permit prohibitions each day the California Metals 297 S. Marshall Facility operates without reporting as required by the Industrial Permit.

233.   Defendants' violations of the Industrial Permit and the CWA are ongoing.

234.   Every day the Defendants operate the California Metals 297 S. Marshall Facility without reporting as required by the Industrial Permit is a separate and distinct violation of the Industrial Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

235.   Defendants have been in daily and continuous violation of the Industrial Permit's reporting requirements every day since at least June 27, 2009.

/././

Complaint for Declaratory and Injunctive Relief and Civil Penalties

236.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

237.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

**B.**     **California Metals 636 Front Facility**

238.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

239.   Plaintiff is informed and believes, and thereon alleges, that Defendants have failed to complete and/or submit annual reports to the Regional Board in violation of Section B(14) of the Industrial Permit.

240.   Plaintiff is informed and believes, and thereon alleges, that Defendants' annual reports did not meet the monitoring and reporting requirements of the Industrial Permit in violation of Section B(13) and B(14) of the Industrial Permit.

241.    Plaintiff is informed and believes, and thereon alleges, that Defendants' annual reports were inaccurate and/or did not include a complete Annual Comprehensive Site Evaluation in violation of Section A(9) of the Industrial Permit.

242.   Plaintiff is informed and believes, and thereon alleges, that Defendants' annual reports were inaccurate and stated that the SWPPP's BMPs address existing potential pollutant sources when they did not, in violation of Section B of the Industrial Permit.

/././

/././

243. Plaintiff is informed and believes, and thereon alleges, that Defendants' annual reports were false and stated that the SWPPP was up to date when it was not, in violation of Section B of the Industrial Permit.

244. Plaintiff is informed and believes, and thereon alleges, that Defendants failed to submit a written report identifying what additional BMPs will be implemented to achieve water quality standards even though the Defendants discharge exceeded receiving water quality standards, in violation of Receiving Water Limitations C(3) and C(4) of the Industrial Permit.

245. Plaintiff is informed and believes, and thereon alleges, Defendants' discharges of contaminated storm water are causing or contributing to exceedances of applicable water quality standards contained in a Statewide Water Quality Control Plan, and/or the discharge prohibitions set forth in the Chapter 3 of the Basin Plan, in violation of Receiving Water Limitation B(2) of the Industrial Permit.

246. Defendants have been in violation of the Industrial Permit prohibitions each day the California Metals 636 Front Facility operates without reporting as required by the Industrial Permit.

247. Defendants' violations of the Industrial Permit and the CWA are ongoing.

248. Every day the Defendants operate the California Metals 636 Front Facility without reporting as required by the Industrial Permit is a separate and distinct violation of the Industrial Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

249. Defendants have been in daily and continuous violation of the Industrial Permit's reporting requirements every day since at least June 27, 2009.

250. By committing the acts and omissions alleged above, that Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 27, 2009 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

/././

251.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against the Defendants as set forth hereafter.

## VII.      RELIEF REQUESTED

252.   Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.      A Court order declaring Defendants to have violated and to be in violation of Section 301(a) of the CWA 33 U.S.C. § 1311(a) for their unlawful discharges of pollutants from the California Metals 297 S. Marshall Avenue Facility in violation of the substantive and procedural requirements of the Industrial Permit;

b.      A Court order declaring Defendants to have violated and to be in violation of Section 301(a) of the CWA 33 U.S.C. § 1311(a) for their unlawful discharges of pollutants from the California Metals 636 Front Street Facility in violation of the substantive and procedural requirements of the Industrial Permit;

c.      A Court order enjoining the Defendants from violating the substantive and procedural requirements of the Industrial Permit;

d.      A Court order assessing civil monetary penalties of $37,500 per day per violation for each violation of the CWA at the California Metals 297 S. Marshall Avenue Facility occurring since June 27, 2009, as permitted by 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4;

e.      A Court order assessing civil monetary penalties of $37,500 per day per violation for each violation of the CWA at the California Metals 636 Front Street Facility occurring since June 27, 2009, as permitted by 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4;

f.      A Court order requiring Defendants to take appropriate actions to restore the quality of waters impaired by their activities;

g. A Court order awarding CERF its reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d);

h. Any other relief as this Court may deem appropriate.

Dated: February 20, 2015   Respectfully submitted,


           COAST LAW GROUP LLP


           By: s/Marco A. Gonzalez
           MARCO A. GONZALEZ
           Attorneys for Plaintiff
           COASTAL ENVIRONMENTAL
           RIGHTS FOUNDATION
           E-mail: marco@coastlawgroup.com

Complaint for Declaratory and Injunctive Relief and Civil Penalties