Marco Gonzalez (SBN #190832)
Livia Borak (SBN #259434)
COAST LAW GROUP LLP
1140 South Coast Highway 101
Encinitas, California  92024
Tel:  760.942.8505
Fax:  760.942.8515

Attorneys for Plaintiff
COASTAL ENVIRONMENTAL RIGHTS FOUNDATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>CALIFORNIA METALS, INC.,<br><br>      Defendant. | Case No. 3:15-cv-00380-JM-RBB<br><br>**[Proposed]**<br>**MODIFIED CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*.)** |

WHEREAS, Coastal Environmental Rights Foundation ("CERF" or "Plaintiff") is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

WHEREAS, CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and one of CERF's primary areas of advocacy is water quality protection and enhancement;

WHEREAS, California Metals, Inc. ("California Metals" or "Defendant") is an Owner and/or Operator of the California Metals and Miller Metals scrap metal recycling facilities located at 297 S. Marshall Avenue, El Cajon, California (hereinafter "California Metals 297 S. Marshall Facility") and

636 Front Street, El Cajon, California (hereinafter "California Metals 636 Front Facility") (collectively referred to as the "California Metals Facilities" or the "Sites");

WHEREAS, CERF contends that the California Metals' operations at the California Metals Facilities result in discharges of pollutants to storm drains, San Diego River and ultimately the Pacific Ocean (collectively referred to as the "Receiving Waters") and California Metals' discharges are regulated by the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. ("CWA" or "Act"), Sections 301(a) and 402, 33 U.S.C §§ 1311(a), 1342;

WHEREAS, on June 27, 2014, CERF served California Metals, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), with a notice of intent to file suit ("60-Day Notice") under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b). The 60-Day Notice alleged that the recipients had in the past and in fact continue to violate Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants into Receiving Waters in violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS0000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Permit") and the Act;

WHEREAS, on August 15, 2014, CERF served California Metals, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Board and the Regional Board, with a second 60-Day Notice under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b). The second 60-Day Notice alleged additional violations of Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, in violation of the Industrial Permit and the Act;

WHEREAS, on February 20, 2015, CERF filed a complaint against California Metals entitled Coastal Environmental Rights Foundation v. California Metals, Inc., ("Complaint");

WHEREAS, CERF and California Metals (collectively referred to herein as the "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

/././

[Proposed] Modified Consent Decree
Case No.  3:15-cv-00380-JM-RBB

**WHEREAS,** this Consent Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency for the statutory review period pursuant to 33 U.S.C. § 1365(c) and 40 C.F.R. § 135.5;

**WHEREAS**, all actions taken by California Metals pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Southern District Court pursuant to Section 505(c)(1) of the Act, 33 U.S.C. §1365(c)(1), because the California Metals Facilities at which the alleged violations took place are located within this District;

3.      The Complaint states a claim upon which relief may be granted against California Metals pursuant to Section 505 of the Act, 33 U.S.C. § 1365;

4.      CERF has standing to bring this action.

## I.   **OBJECTIVES**

5.       It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in Section 101 *et seq.* of the CWA, 33 U.S.C. § 1251 *et seq.*, and to resolve those issues alleged by CERF in its Complaint. In light of these objectives and as set forth fully below, California Metals agrees, *inter alia,* to comply with the provisions of this Consent Decree and to comply with the requirements of the Industrial Permit and all applicable provisions of the CWA at the California Metals Facilities. Specifically, Receiving Water Limitation C(2) in the Industrial Permit requires that the California Metals Facilities "not cause or contribute to the exceedance of an applicable water quality standard." Effluent Limitation B(3) of the Industrial Permit requires that Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT"). California Metals is required to develop and

/././

/././

implement BMPs necessary to comply with the Industrial Permit's requirement to achieve compliance with BAT/BCT standards and with Water Quality Standards.[1]

## II.   COMMITMENTS OF THE PARTIES

### A.   Industrial Storm Water Pollution Control Measures

6.     Within one-hundred (100) days of the execution of this Consent Decree, California Metals agrees to present CERF with proposed design plans and specifications for the industrial storm water collection and treatment facility BMPs for each California Metals Facility.

7.     California Metals shall assess the feasibility of the following discharge minimization BMPs to the extent applicable to operation and/or use of the Sites.

(a)     Materials Storage and Industrial Activities. Placing sources of contamination in covered containers or under cover with such areas contained by berming or other containment sufficient to prevent the exposure of pollutants to storm water or rainwater and the runoff or discharge of pollutants;

(b)     Coating. Coating structural sources of contamination (e.g. galvanized building roofs and siding);

(c)     Sweeping. Employing high efficiency sweeping in order to prevent the discharge of pollutants;

(d)     Harvesting and Storing Runoff. Constructing and maintaining on-site retention facilities (such as retention ponds or swales, infiltration basins, baker tanks, sumps, cisterns, or dry wells/ injection wells) designed to hold and store the runoff generated by a 5 year 24 hour return period storm event without any off-site discharge;

(e)     Infiltrating Runoff. Creating a pervious site such that infiltration happens passively through the site;

(f)     Infiltration Structure. Collecting and routing storm water to a structure that is designed to be an infiltration structure (such as an infiltration basin or dry well/ injection well);

(g)     Treating Runoff. Treating runoff discharging from the site.

---

[1]  Water Quality Standards means water quality criteria contained in the Regional Water Quality Control Plan, San Diego Region ("Basin Plan"), the California Ocean Plan, the National Toxics Rule, the California Toxics Rule, and other state or federally approved surface water quality plans.

(h)     Sand Filters. The Interim BMP Plan may include the installation of the advanced sand filters evaluated in the Caltrans Retrofit Study ("CRS") at appropriate locations.

(i)     Routing Discharge to the Publicly Owned Treatment Works. Routing discharge to the publicly owned treatment works ("POTW")/ sanitary sewers, in combination with on-site retention such that flows are discharged off-peak in the POTW so as not to risk exacerbating wet weather Sanitary Sewer Overflow risks from the POTW.

(j)     Vehicle and Equipment Maintenance and Fueling.

i.     Conducting all vehicle and equipment maintenance and fueling at the California Metals Facilities on asphalt or another impermeable surface;

ii.     Conducting all vehicle and equipment maintenance and fueling at the California Metals Facilities under cover;

iii.     Berming of otherwise containing the surface of the area where vehicle maintenance and fueling occurs (hereinafter "Maintenance and Fueling Area") in order to prevent the exposure of pollutants to storm water or rainwater and the runoff or discharge of pollutants;

iv.     Cleaning the Maintenance and Fueling Area as necessary to control track-off of pollutants;

v.     Dispensing all petroleum products within the Maintenance and Fueling Area(s);

vi.     Installing tire washing facilities at exit points from the California Metals Facilities to prevent off-site tracking from vehicles;

vii.     Annually power washing the entire paved part of the California Metals Facilities, including areas not reachable by mechanical sweepers, and dispose of the contaminated water consistent with all federal, state and local requirements, and not to area storm drains.

8.     Within thirty (30) days of receipt of the proposed design plans and specifications required pursuant to Paragraph 6, CERF will review the design plans for the purpose of their incorporation into the respective SWPPPs and M&RPs. If CERF does not accept the proposed design plans and specifications, the parties will resolve the dispute via the Dispute Resolution process outlined herein in

Paragraphs 20 through 23. If CERF invokes the dispute resolution procedure as to only one Site's design plan, California Metals' obligations as to the other Site shall continue in full force and effect.

**B.**    **STORM WATER POLLUTION PREVENTION PLANS**

9.    <u>SWPPP Revisions</u>. Within thirty (30) days of finalization of the proposed design plans and specifications required in Paragraph 8, California Metals agrees to revise the SWPPPs currently in effect at the California Metals Facilities to incorporate all storm water pollution prevention measures and other applicable requirements set forth (i) in this Consent Decree and (ii) the 2014 Industrial Permit (NPDES No. CAS000001 as amended April 1, 2014). Specifically, the SWPPPs shall include a description of all industrial activities and corresponding potential pollution sources and, for each potential pollutant source, a description of the potential pollutants from the sources. The SWPPPs shall also identify BMPs (and their implementation dates) designed to achieve compliance with the provisions of this Consent Decree, as well as their estimated effectiveness. California Metals shall revise the SWPPPs as necessary to incorporate additional BMPs developed pursuant to this Consent Decree.

10.    <u>CERF's Review of Revised SWPPPs</u>. California Metals shall submit one electronic copy of the revised SWPPPs to CERF upon completion of the revisions specified in Paragraph 9 concurrent with California Metals filing of a new NOI and SWPPP on SMARTS no later than July 1, 2015.

a.    Within twenty (20) days of CERF's receipt of the revised SWPPPs, CERF shall provide California Metals with comments and suggestions, if any, concerning the revisions to the SWPPPs.

b.    Within ten (10) days of California Metal's receipt of CERF's comments on the revised SWPPPs, California Metals shall incorporate CERF's comments and submit the revised SWPPPs to CERF and amend its filing on SMARTS.

c.    If CERF is dissatisfied with either SWPPP after its re-issuance pursuant to paragraph 10(b) above, CERF may, within sixty (60) days of CERF's receipt of the SWPPP, elect to invoke the dispute resolution procedures outlined in Paragraphs 20 through 23 below. If CERF invokes the dispute resolution procedure as to only one SWPPP, California Metals' obligations as to implementation of the other SWPPP shall continue in full force and effect.

d.    Within sixty (60) days of CERF's approval of the revised SWPPPs and M&RPs,

California Metals shall commence implementation of the revised SWPPPs and M&RPs if it has not already done so and begin construction of the structural BMPs as described therein.

        e.    California Metals shall complete construction of the structural BMPs as described in the SWPPPs and M&RPs in conformity with the schedule contained within the SWPPPs and M&RPs as approved by CERF.

**C.    <u>MONITORING AND REPORTING</u>**

11.    <u>Site Inspections</u>. During the life of this Consent Decree, CERF's Water Quality site inspection consultant, accompanied by CERF's attorney or other representative, may conduct up to two Site Inspections each calendar year at the California Metals Facilities. The Site Inspections shall occur during normal business hours and CERF shall provide California Metals two (2) business days notice prior to each inspection. During the Site Inspections, CERF and/or its representatives shall be allowed access to the California Metals SWPPP and monitoring records and to all non-privileged monitoring reports and data for the California Metals Facilities. During the Site Inspections, CERF and/or its representatives may collect split samples of storm water discharges at the California Metals Facilities. A certified California laboratory shall analyze storm water samples collected by CERF. CERF shall make every reasonable effort to ensure that its inspections are scheduled in such a manner as to allow California Metals' compliance officer to be present at all inspections.

12.    <u>Compliance Monitoring and Oversight</u>. California Metals agrees to help defray CERF's reasonable costs incurred in conducting Site Inspections and compliance monitoring by reimbursing CERF Ten Thousand Dollars ($10,000) for these costs. Five-Thousand ($5,000.00) dollars of this amount shall be paid within ten (10) days of the Effective Date of this Consent Decree. The remaining Five Thousand ($5,000.00) dollars shall be paid in ten equal installments of Five Hundred ($500.00) dollars every thirty (30) days commencing thirty (30) days after the Effective Date. Provided, however, that California Metals shall have the right but not the obligation to prepay any unpaid balance. California Metals agrees to make compliance monitoring and oversight funds payable to "Coastal Environmental Rights Foundation" and deliver the same by certified mail or overnight delivery to Coast Law Group, LLP, Attn: Marco Gonzalez, 1140 S. Coast Highway 101, Encinitas, CA, 92024.

/./././

13.   <u>Reporting</u>. During the life of this Consent Decree, on a quarterly basis, California Metals shall provide CERF with a notice regarding all compliance and monitoring data, including inspection reports, related to the California Metals Facilities that have been filed on SMARTs during the previous ninety (90) day period.  In the event that CERF is unable to obtain legible copies of said compliance and monitoring data from SMARTs, California Metals shall within five (5) business days of receiving notice from CERF of its inability to obtain said compliance and monitoring data from SMARTs mail paper copies of such reports to CERF via U.S. Mail at the notice address contained herein.

14.   <u>Document Provision</u>. During the life of this Consent Decree, California Metals shall notify CERF of all documents related to water quality at the California Metals Facilities that are filed on SMARTS or provided to a local agency or municipality. Such notification shall be provided to CERF concurrently as they are sent to the agencies and/or municipalities.  If such documents are unavailable on SMARTS within a reasonable period of time, CERF may request, and California Metals will provide hard copies of such documents to CERF.

### D.   **ENVIRONMENTAL PROJECTS AND FEES**

15.   <u>Environmental Mitigation Project</u>. California Metals agrees to pay $5,000 to San Diego CoastKeeper for use in a supplemental environmental project to eliminate or mitigate the impacts of storm water pollution to the San Diego River watersheds receiving discharges from the California Metals Facilities. California Metals shall make the mitigation payment in ten equal monthly installments commencing thirty (30) days after the Effective Date of this Consent Decree and mailed to San Diego CoastKeeper. California Metals shall provide CERF with a copy of such payment.

16.   <u>CERF's Fees and Costs</u>. California Metals agrees to reimburse CERF for CERF's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and preparing the lawsuit, and negotiating a resolution of this matter (together "Fees and Costs"). Legal fees shall be billed at a blended rate not to exceed Three Hundred Fifty ($350.00) dollars per hour. Investigation fees, expert fees and other personnel involved in this matter shall be billed at a blended rate not to exceed One Hundred ($100.00) dollars per hour.  All non-personal expenses shall be billed at cost without markup.  Five Thousand ($5,000)) dollars of the fees and costs shall be made within ten business days of the Effective Date and the receipt by Opper & Varco of an

itemized accounting of Fees and Costs, whichever is the later in time. The balance of Fees and Costs shall be paid in ten (10) equal installments commencing thirty (30) days after the Effective Date, provided, however, that California Metals shall have the right but not the obligation to prepay any unpaid balance.   All payments shall be made payable to "Coast Law Group LLP" and delivered Attn: Marco Gonzalez, 1140 S. Coast Highway 101, Encinitas CA, 92024.

**E.     STIPULATED PAYMENT**

17.     California Metals shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree, unless the missed deadline results from a Force Majeure Event. Payments for missed deadlines shall be made to San Diego CoastKeeper for the restoration and/or improvement of the watershed in the area affected by the missed deadline. California Metals agrees to make the stipulated payment within thirty (30) days of a missed deadline to San Diego CoastKeeper. California Metals shall provide CERF with a copy of each such payment.

**F.     COMMITMENTS OF PLAINTIFF**

18.     <u>Stipulated Dismissal</u>. Within three (3) days of execution of this Consent Decree by the Parties, CERF shall file this Consent Decree with the United States District Court for the Southern District of California ("District Court").

19.     <u>Review by Federal Agencies</u>. CERF shall submit this Consent Decree to EPA and the U.S. Department of Justice ("DOJ") within three days of the execution of this Consent Decree for review consistent with 40 C.F.R. § 135.5. In the event that EPA or DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

**G.     DISPUTE RESOLUTION**

20.     This Court shall retain jurisdiction over this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

21.     <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the

party's intention to resolve the dispute under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute informally over a period of fourteen (14) calendar days from the date of the notice.

22.     If the Parties cannot resolve a dispute by the end of the meet and confer informal negotiations described in Paragraph 21 above, California Metals may invoke formal mediation by sending CERF a registered letter to that effect no more the five (5) business days after the fourteen (14) days.  Referenced in Paragraph 21 above.  The Parties shall mutually agree on a mediator and a mediation process within fifteen (15) business days of the date of California Metals notice to CERF. California Metals shall be responsible for all of the mediator's costs.

23.     If the Parties cannot resolve a dispute by the end of the mediation process described in Paragraph 22 above, the party invoking the dispute resolution provision shall provide notice to the other party that it intends to invoke formal dispute resolution by filing a motion before the United States District Court for the Southern District of California. The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

24.     If a party initiates a motion or proceeding before the Court relating to enforcement of the terms and conditions of this Consent Decree, the party shall be entitled to recover fees incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §1365 and § 1319.

**III.     RETENTION OF JURISDICTION AND TERMINATION**

25.     The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree until the end of the 2015-2016 wet season (May 30, 2016) unless either Party files and is granted a timely motion requesting  an extension of time for the Court to retain jurisdiction.

26.     Unless such motion is granted this Consent Decree shall terminate on May 30, 2016.

**IV.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

27.     In consideration of the above, upon termination of this Consent Decree, the Parties hereby fully  release, except for claims for California Metals' failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers,

agents, employees, landlords/property owners, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Effective Date of this Consent Decree.

28.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to California Metals

## V.     **MISCELLANEOUS PROVISIONS**

29.     The Parties enter into this Consent Decree to avoid prolonged and costly litigation. Neither the Consent Decree, nor any payment pursuant to the Consent Decree, nor any implementation of BMPs or any other compliance with this Consent Decree, shall constitute or be construed as – and California Metals expressly does not intend to imply—any admission to any finding, adjudication, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. California Metals maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

30.     Force Majeure. Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; unexpected and unintended accidents not caused by California Metals' or its employees' negligence; civil disturbance, vandalism, sabotage or terrorism; restrain by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance, shall have the burden of establishing that it could not reasonably have been expected to avoid the event or circumstance, and which by exercise of due diligence has been unable to overcome the failure of performance. California Metals shall exercise due diligence to resolve and remove any force majeure event.

31.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial Permit, the Clean Water Act, or specifically herein.

32.   <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

33.   <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

34.   <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular, certified, or overnight mail as follows:

<u>If to Plaintiff</u>:
        Marco Gonzalez
        Coast Law Group LLP
        1140 South Coast Highway 101
        Encinitas, CA 92024

With copies to:
        Coastal Environmental Rights Foundation
        1140 South Coast Highway 101
        Encinitas, CA 92024

<u>If to California Metals</u>:
        S. Wayne Rosenbaum
        Opper & Varco LLP
        225 Broadway, Suite 1900
        San Diego, CA 92101

With copies to:
        Josh Turchin
        California Metals, Inc.
        297 S. Marshall Avenue
        El Cajon, CA 92020

Notifications of communications shall be deemed submitted three days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the Parties may agree to transmit documents electronically or by facsimile.

35.   <u>Effect of Consent Decree</u>. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the California Metals' compliance with this Consent Decree will

constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the California Metals to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

36.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

37.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

38.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

39.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

40.     Authority. The undersigned representatives for CERF and California Metals each certify that it is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

41.     The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

42.     The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, California Metals does not admit liability for any purpose as to any allegation or matter arising out of this Action.

43.     The term "Effective Date," as used in this Consent Decree, shall mean the date  on which the Court enters this Consent Decree.

1    The undersigned representatives for CERF and California Metals each certify that he/she is fully

2    authorized by the party whom he/she represents to enter into the terms and conditions of this Consent

3    Decree and that this Consent Decree binds that party.

4        IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date

5    first set forth above.

6

7                                           COASTAL ENVIRONMENTAL
                                            RIGHTS FOUNDATION
8    Dated: _May 11_, 2015

9

10                                          Sara S. Kent, Programs Director

11                                          CALIFORNIA METALS INC

12   Dated: _____, 2015

13

14

15                                          _____

16                                          Josh Turchin, President

17   APPROVED AS TO FORM

18

19                                          COAST LAW GROUP LLP

20   Dated: _May 11_, 2015

21

22                                          Marco Gonzalez

23

24                                          OPPER & VARCO LLP

25   Dated: _____, 2015

26

27                                          _____

28                                          S. Wayne Rosenbaum

---

14

The undersigned representatives for CERF and California Metals each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree and that this Consent Decree binds that party.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

COASTAL ENVIRONMENTAL
RIGHTS FOUNDATION

Dated: _____, 2015

_____

CALIFORNIA METALS INC

Dated: __5/11__, 2015

_____
Josh Turchin, President

APPROVED AS TO FORM

COAST LAW GROUP LLP

Dated: _____, 2015

_____
Marco Gonzalez

OPPER & VARCO LLP

Dated: _____, 2015

_____
S. Wayne Rosenbaum

14

1       The undersigned representatives for CERF and California Metals each certify that he/she is fully

2 authorized by the party whom he/she represents to enter into the terms and conditions of this Consent

3 Decree and that this Consent Decree binds that party.

4       IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date

5 first set forth above.

6

7                                         COASTAL ENVIRONMENTAL
RIGHTS FOUNDATION

8 Dated: _____, 2015

9

10                                        _____

11                                        CALIFORNIA METALS INC

12 Dated: _____, 2015

13

14

15                                        Josh Turchin, President

16

17 APPROVED AS TO FORM

18

19                                        COAST LAW GROUP LLP

20 Dated: _____, 2015

21

22                                        Marco Gonzalez

23

24                                        OPPER & VARCO LLP

25 Dated:   5/10  , 2015

26

27                                        S. Wayne Rosenbaum

28